```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA


UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                      NO: 05-209

DAMIAN DIXON                                SECTION: "J"
```

### ORDER AND REASONS

Before the Court is defendant Damian Dixon's **Motion to Quash the Jury Venire**. (Rec. Doc. 19). The United States opposes the motion. (Rec. Doc. 29). Having considered the evidence, the legal memoranda and arguments of counsel, and the applicable law, the Court finds that defendant's motion should be DENIED.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant was indicted in the Eastern District of Louisiana on July 7, 2005 for violating the Federal Gun Control Act by knowingly possessing a firearm after having previously been convicted of a felony. (Rec. Doc. 1). Hurricane Katrina hit the Eastern District area on August 29, 2005 devastating several southeastern Louisiana parishes and causing population

displacement. Defendant was arrested in the Western District of Arkansas on September 14, 2005 and was then transferred to the Eastern District of Louisiana on September 20, 2005. The public defender was appointed to represent defendant, he was arraigned, and his jury trial was initially set for December 12, 2005. The trial date was twice continued in the interests of justice and is now set for February 21, 2006.

On January 12, 2006, defendant filed a Motion to Inspect and Copy Juror Selection Records (Rec. Doc. 18), the instant Motion to Quash Jury Venire (Rec. Doc. 19), and a Motion for Expedited Hearing on each of these. (Rec. Doc. 16). The Court has granted the motion for expedited hearing (Rec. Doc. 17), as well as the motion to inspect, in accordance with Chief Judge Berrigan's January 24th "Memorandum to Clerk". (Rec. Doc. 28). On January 24, 2006 defendant filed an unopposed Motion to Continue Trial and Evidentiary Hearing. (Rec. Doc. 30). The Court denied this motion. (Rec. Doc. 31).

## DISCUSSION

Defendant has moved to quash the jury venire by alleging violation of his right, under the Sixth Amendment to the United States Constitution and under the Jury Selection and Service Act of 1968 ("JSSA"), 28 U.S.C. § 1863(b)(3), to a jury drawn from a

fair cross-section of the community. *See*, *Taylor v. Louisiana*, 419 U.S. 522, 530 (1975)(discussing the right's existence under both the Constitution and the JSSA). Defendant contends that his constitutional right is implicated by Hurricane Katrina's disproportionate displacement of African-Americans. Defendant contends that the statutory right is implicated by the disproportionate displacement of potential jurors from three devastated parishes in the district. Defendant contends that the violation of his rights under both the Constitution and the JSSA stems from the failure of the Court to correct for these disproportions when mailing juror qualification forms and/or summonses, and when disqualifying potential jurors based on residence outside the district.

Defendant seeks to require the Jury Commission to "find the displaced persons drawn from the master jury wheel and arrange for those ultimately selected for venires to come to New Orleans." (Rec. Doc. 19 at 3). Alternatively, defendant seeks to have the Jury Selection Plan amended "to provide for new draws from the qualified jury wheel until the proportion of African-Americans on the venire reaches the same proportion as on pre-Katrina venires." *Id.* at 3-4.

*The Statutory Claim*

Defendant has moved to stay the proceedings against him before voir dire begins and so his motion is timely under the JSSA. *See* 28 U.S.C. § 1867(a),(e). Defendant contends that due to their disproportionate displacement, persons in Orleans, St. Bernard, and Plaquemines parishes will not receive juror qualification forms and therefore will not be included in the qualified jury wheel or in venires. Defendant contends that this "undermines the purpose of the [JSSA] requirement of proportional representation on the master jury wheel."

To succeed in the statutory claim defendant must show that the Eastern District's plan substantially fails to comply with the JSSA. *Id.* § 1867(a). "A substantial failure is one that destroys the 'random nature or objectivity of the selection process.'" *U.S. v. Hemmingson*, 157 F.3d 347, 358 (5th Cir. 1998) (*quoting United States v. Kennedy*, 548 F.2d 608, 612 (5th Cir. 1977).

The evidence before the Court, including the testimony of the Jury Administrator and the Chief Deputy Registrar of Voters for Orleans, indicates that the Eastern District's Jury Section administers the jury selection process in accordance with the Jury Selection Plan as written, and that the process is the same

before Hurricane Katrina as after Hurricane Katrina. *See* LOUISIANA RULES OF COURT–FEDERAL, PLAN FOR THE SELECTION OF GRAND AND PETIT JURORS PURSUANT TO THE JURY SELECTION AND SERVICE ACT OF 1968–EASTERN DISTRICT ("Jury Selection Plan") 301-06 (Thomson/West 2005). This process includes a selection procedure that is random as to the individual selected, but by means of a quotient creates a master wheel with proportional representation among the parishes comprising the district. The master wheel is created by drawing from the Voter Registration lists of the thirteen parishes that comprise the district.[1] Persons in the master wheel are occasionally selected at random to be sent juror qualification forms to determine whether they are qualified to serve on a jury in the district. If they are qualified they are placed on the qualified wheel. If the form is not returned or indicates that the person is not qualified, then the person is not placed on the qualified wheel and will not be summoned for venires.  If the form is returned as undeliverable, e.g. when no forwarding address has been left, then the Jury Section checks the local telephone directory and the information operator for current

---

[1] The thirteen parishes are Assumption, Jefferson, Lafourche, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John, St. Tammany, Tangipahoa, Terrebone, and Washington. 28 U.S.C. § 98(a).

5

contact information on the person. If able to contact the person, the Jury Section determines where the person resides, and, if they are outside of the district, whether or not the person intends to return. Under the plan and the JSSA, a person is not qualified for jury service if that person has not resided within the district for a period of one year prior to selection. Therefore, if someone indicates either by telephone or on the returned juror qualification form that he or she no longer resides in the district, that person is not placed on the qualified wheel. If the person indicates that he or she is residing outside of the district only temporarily, then placement on the qualified wheel is deferred until the next selection.

Defendant argues[2] that the selection process above does not comply with the JSSA because, in the special circumstances caused by the hurricane, it does not do enough to prevent the disqualification of displaced persons who may intend to return, but never receive forms. Defendant also indicates that there may be persons who are displaced temporarily and who would like to fulfill their jury duties in the term when they are summoned, but

---

[2] Because the memorandum accompanying the motion devotes only one paragraph to the JSSA claim, defendant's arguments were largely revealed through the presentation of evidence at the hearing on the motion. Even at the hearing, however, the constitutional claim was the focus of defendant's argument.

6

are unable without the Court's assistance with travel and lodging expenses. Defendant suggests that because insufficient effort has been made to identify and enable either class of persons, the Eastern District's Jury Selection Plan is noncompliant with the JSSA and must be modified.

As an initial note, the testimony of the Jury Administrator made clear that for anyone to be disqualified because they no longer reside in the district, they must make a positive representation to the Court's Jury Section to that effect, either by returning a completed form or by telephone when contacted by the Jury Section.

The Jury Administrator's testimony indicates that there has not yet been a person who, upon being summoned from an out of district location, has indicated that he or she would like to fulfill jury duties in the district, but needed help from the Court. Defendant offered no evidence that such persons exist. Because there is no evidence that such a class of persons exist, the Court finds that the failure to identify and enable these persons' return is not a substantial violation of the purposes of the JSSA. Neither the randomness nor the objectivity of the selection process has been affected.

Neither has defendant presented evidence regarding the

number of those whose qualification forms are returned as undeliverable, but who intend to return and therefore still reside in the district. The assumption of a disproportionate number of undeliverable qualification forms is based upon statistical information regarding the disproportionate number of people displaced from Orleans, Plaquemines, and St. Bernard parishes as compared to the other parishes in the district. The assumption apparently includes a further assumption that those displaced failed to leave a forwarding address, or that the U.S. postal service has failed to deliver to that address. Absent any evidence, the Court is not willing to make the assumption along with defendant that the number of undeliverable juror forms is so significant as to amount to a substantial failure of the purposes behind the JSSA's proportional master wheel requirement.

    Analysis of the evidence before the Court indicates that the current plan and its execution do not lead to a failure of the proportionality requirement. Of the approximately 824 summonses sent out to qualified jurors for the January 2006 petit term, approximately 608 of those summoned were still qualified. *See* Gov't. Ex. A. Of these qualified jurors, approximately 179 were from Orleans parish, twelve were from Plaquemines parish, and twenty-three were from St. Bernard parish. *Id.* Therefore,

approximately 29.4 percent of the January's qualified jurors were from Orleans, 1.9 percent were from Plaquemines, and 3.8 percent were from St. Bernard. A look at Louisiana's registered voter lists for the thirteen parishes that comprise the Eastern District shows that, prior to Hurricane Katrina hitting on August 29, 2005 but after the Master Wheel was constituted on March 17, 2005, approximately twenty-seven percent of registered voters were from Orleans, 1.6 percent were from Plaquemines, and four percent were from St. Bernard.[3] The close match in percentages between the pre-Katrina voter registration and the post-Katrina qualified jurors reveals that the three suspect parishes are proportionally represented among those qualified.[4] Although this analysis is admittedly inexpert, it shores up this Court's decision not to find a violation of the JSSA's proportionality requirement based upon defendant's argumentation alone. The evidence tends to validate the continued integrity of the JSSA's master wheel proportionality requirement.

---

[3] The total number of active and inactive registered voters in these thirteen parishes as of June 30, 2005 was 1,076,660. *See http://sos.louisiana.gov/stats/Quarterly_Statistics/Statewide/ 2005_2q_sta_comb.txt.* Of these Orleans registered 297,809, Plaquemines registered 17,472, and St. Bernard registered 42,806.

[4] Of course there is no requirement that the parishes be proportionally represented among those qualified for service on the petit jury.

*The Constitutional Claim*

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a...trial, by an impartial jury of the State and district wherein the crime shall have been committed." This provision is understood to require that the jury venire from which a petit jury is selected represent a fair cross-section of the community. *See Taylor v. Louisiana*, 419 U.S. 522 (1975); *Duren v. Missouri*, 439 U.S. 357, 364-65 (1979). To establish a *prima facie* violation of the fair cross-section requirement defendant must show that (i) a distinctive group in the community (ii) is underrepresented on jury venires in relation to its numbers in the community, and that (iii) this underrepresentation is the result of systematic exclusion from the jury selection process. *Duren*, 439 U.S. at 364-66. The *Duren* elements are conjunctive and the failure to meet any one defeats the fair cross-section claim. *See, e.g., United States v. Williams*, 264 F.3d 561, 568-69 (5th Cir. 2001).

That African-Americans are a distinctive group for jury selection purposes is undisputed. *See McGinnis v. Johnson*, 181 F.3d 686, 689 (5th Cir. 1999). Defendant therefore meets the first prong.

To determine if the group was underrepresented, both the

United States Supreme Court and the Fifth Circuit Court of Appeals use the statistical "absolute disparity" test, which examines the difference between the percentage of the group eligible for jury duty and the percentage <u>in the defendant's jury venire</u>. *See Duren*, 439 U.S. at 364-66; *Williams*, 264 F.3d at 568; *United States v. Maskeny*, 609 F.2d 183, 190 (5th Cir. 1980).

Because defendant's venire panel has not yet been assembled, he has offered no evidence in this regard. Defendant relies instead upon demographic statistics concerning the disproportionate displacement of the African-American population due to Hurricane Katrina. *See* attachments to Def.'s Motion to Quash. Defendant filed a Motion to Continue in order to allow him time to confect an expert statistical report on the greater proportion of African-Americans displaced from the three hardest hit parishes. The Court denied the motion because such a report would contribute nothing toward proving a disproportion between the percentage of African-Americans eligible for jury duty in the community and the percentage in the defendant's jury venire. This fact indicates that defendant's constitutional challenge, as opposed to his statutory challenge, is somewhat premature.

In addition, the statistical evidence gave no indication that those displaced from the three parishes were entirely

displaced from the district. The government argues that many of those displaced could be residing in the surrounding parishes and thus still be residing in the district.

A further problem with defendant's attempt to establish *Duren's* second prong is that defendant argues a potential disparity, not with the make-up of the present community, but with the make-up of the master jury wheel. There are cases where an outdated master wheel has been challenged for inaccurately reflecting the current community. *See Hamling v. United States*, 418 U.S. 87 (1974) (four year old jury wheel did not contain anyone presently under twenty-four years old); *United States v. Rodriguez*, 588 F.2d 1003 (5th Cir. 1979) (outdated jury wheel failed to account for dramatic increase of current Hispanic population). Although these challenges have not succeeded, it stands to reason that a sufficiently outdated master wheel would violate the constitutional fair cross-section requirement because it no longer represents the current community.[5]

Defendant's argument turns this reasoning on its head by objecting that the present community and a jury venire drawn from it no longer represent the outdated master wheel. It only makes

---

[5] The JSSA's requirement that the master jury wheel be refilled at least every four years reflects this understanding. 28 U.S.C. § 1863(b)(4)

12

sense for the present community to be the gauge for a fair cross-section challenge because to pick any other time would be arbitrary. The defendant offers, and the Court has found, no support for a constitutional right to a jury selected from a fair-cross section of the master jury wheel, as opposed to the present community.

Defendant's argument that the present community consists of all those currently registered to vote within the district is inaccurate. The community for purposes of *Duren's* second prong are "those individuals who are eligible to serve as jurors" in the district. *United States v. Williams*, 264 F.3d 561 (5th Cir. 2001). As the JSSA and the Jury Selection Plan make clear those who have not resided in the district for one year prior to selection are not eligible to serve as jurors. *See* 28 U.S.C. § 1865(b)(1); Jury Selection Plan at 304. Therefore all of those on the master wheel and the voter registration lists who, in response to qualification forms, follow-up phone calls, or summonses, have affirmatively represented to the Jury Section that they no longer reside in the district are no longer a part of the current community of potential jurors.[6] Defendant cannot

---

[6] The testimony of the Jury Administrator revealed that those who indicate that they will return to the district are not disqualified, but deferred to a future selection when they will

13

object that because they were on the voter registration lists or on the master wheel, they must be fairly represented on the venire panel.

While the Court has given due consideration to all of the preceding, the Court does not, in the main, base its decision on the failure of defendant to satisfy *Duren's* second prong. Even assuming a violation of *Duren's* second prong, the Court considers dispositive defendant's failure to establish a violation of *Duren's* third prong.

Although proof of intent to discriminate is not required, defendant must establish that the alleged underrepresentation in his jury venire was "systematic-that is, inherent in the particular jury-selection process utilized." *Duren*, 439 U.S. at 366. Establishing only that a distinctive group was underrepresented in defendant's own venire is insufficient. *Compare id.* (finding systematic exclusion where women underrepresented in every weekly venire for nearly one year) *with McGinnis v. Johnson*, 181 F.3d 686, 691-92 (5th Cir. 1999) (finding no systematic exclusion because evidence only related to defendant's jury *venire*). Also, establishing that external forces, rather than something inherent in the process, caused the

---

be back in the district.

underrepresentation is insufficient. *See, e.g.*, *State v. McDonald*, 387 So.2d 1116 (La. 1980) (flooding preventing appearance of some prospective jurors not inherent in the process); *United states v. Little Bear*, 583 F.2d 411 (8th Cir. 1978) (bad weather causing underrepresentation of rural jurors was not inherent in the process). Where external forces rather than the operation of the selection process have caused an underrepresentation, the Sixth Amendment has not been read to impose an affirmative duty on the courts to remedy that disparity. *See United States v. Gometz*, 730 F.2d 475 (7th Cir. 1984) (failure to follow-up with large percentage of people not responding to jury questionnaires was not systematic exclusion) *United States v. Rioux*, 930 F. Supp. 1558 (D. Conn. 1995) (failure to rectify disproportionate undeliverability of jury questionnaires in minority urban areas was not systematic exclusion because caused by external influences).

   Defendant has failed to present evidence that African-Americans are being systematically underrepresented in the Eastern District. The only statistics referenced that approach relevance are those offered by the United States that the two post-Katrina jury venire panels summoned for service as of the filing of defendant's motion were both within five or six percent

of pre-Katrina African-American proportions. *See* (Rec. Doc. 29 at 17). Even if the pre-Katrina community were the proper benchmark, this difference does not point to a systematic exclusion of African-Americans.[7] Of course, this statistic is insufficient to establish any sort of long-term pattern of proportionality, but it certainly does not establish systematic underrepresentation.

Most importantly, it is untenable to argue that any disproportion arises from circumstances inherent to the operation of the jury selection process. Hurricane Katrina's devastation and any resulting demographic shifts that result in a changing jury composition are manifestly external factors. They do not result from systematic exclusion of the displaced. Therefore, defendant cannot satisfy the third prong of the *Duren* analysis and cannot succeed in a Sixth Amendment claim.

## CONCLUSION

Defendant has failed to establish a substantial failure to comply with the purpose behind the JSSA's proportionality requirement. Defendant has also failed to establish a systematic exclusion of African-Americans from jury venires in the Eastern District.

---

[7] *Swain v. Alabama*, 380 U.S. 202, 209-10 (1965) is often cited for the general proposition that an absolute disparity of less than ten percent fails to show underrepresentation.

Accordingly,

**IT IS ORDERED** that defendant's **Motion to Quash the Jury Venire** (Rec. Doc. 19) is **DENIED**.

New Orleans, Louisiana this the 2nd day of February, 2006.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE